AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

E-FILED
Friday, 15 November, 2024 08:17:39 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

NOV 1 4 2024

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Residence located at 4408 West Bridalwood Drive,
Peoria, Illinois 61615

Case No. 24-MJ-6170

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Central _____ District of _____ Illinois _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 7206(1), 7206(2), | Aiding in the Preparation of False Tax Return |
| 18 U.S.C. § 371, 18 U.S.C. § 1546, | Conspiracy, Fraud and Misuse of Visas, Permits, and Other Documents |
| 18 U.S.C. § 1341 ,18 U.S.C. § 1343 | Mail Fraud, Wire Fraud |

The application is based on these facts:
See attached Affidavit of IRS SA, William Doherty

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Redacted

*Applicant's signature*

William Doherty, IRS Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone. _____    *(specify reliable electronic means)*

Date: _____ 11/14/2024 _____

*Judge's signature*

City and state: _____ Peoria, IL _____    Jonathan E. Hawley, U.S. Magistrate Judge

*Printed name and title*

UNITED STATES DISTRICT COURT          )
                                      )
CENTRAL DISTRICT OF ILLINOIS          )

## AFFIDAVIT

I, William Doherty, being duly sworn, depose and state the following:

1. I am a Special Agent with the Internal Revenue Service, Criminal Investigation (IRS-CI) in Orland Park, Illinois. I have been so employed since November 2022.

2. As part of my duties as an Internal Revenue Service, Criminal Investigation Special Agent, I investigate criminal violations of the Internal Revenue laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act of 1986 (Title 18, United States Code, Sections 1956 and 1957), and other related offenses.

3. In February 2023, I graduated from the Criminal Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. During this training program, I completed courses including constitutional law, search and seizure, surveillance, and a variety of law enforcement-related classes. In June 2023, I graduated from the Special Agent Investigative Techniques program at the National Criminal Investigation Training Academy in Glynco, Georgia. During this training, I completed courses in the following subject matter areas: criminal tax issues, money laundering, search and seizure warrants, investigative techniques, methods of proof, and other financial crime-related topics.

4. I hold a Bachelor of Business Administration with a concentration in accounting. I have approximately nine years of auditing and financial analysis experience, where I completed complex audits of multibillion dollar corporations doing business with the United States Government. I specialized in cost accounting analysis where I obtained financial

information including bank statements, profit and loss statements, and other corporate financial statements. I analyzed that information to determine if those costs were reasonable to the Government.

5.     I make this affidavit in support of an application for a search warrant authorizing the search and seizure of items contained at the home of Andre Makabu located at 4408 West Bridalwood Drive, Peoria, Illinois 61615, described further in Attachment A (the "**Subject Premises**"), for evidence, instrumentalities, fruits, and contraband described further in Attachment B, concerning false and fraudulent tax returns, the aiding in the preparation of a false tax return, in violation of Title 26, United States Code, Sections 7206(1) and 7206(2) and Title 18, United States Code, Sections 371, Conspiracy to commit offense or defraud the United States, 1546, Fraud and Misuse of Visas, Permits, and Other Documents, 1341, Mail Fraud, and 1343, Wire Fraud.

6.     The statements in this affidavit are based on my personal knowledge, information I have received from other law enforcement personnel, and information received from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, fruits, and contraband of violations of Title 26, United States Code, Sections 7206(1), 7206(2) and Title 18, United States Code, Sections 371, 1546, 1341, and 1343 are located at the **Subject Premises.**

## BACKGROUND INFORMATION

### DEFINITIONS AND STATUTES

**Paid Tax Preparers:**

7.     A paid tax return preparer is primarily responsible for the overall substantive accuracy of the tax return and is required by law to sign the return and include their preparer tax identification number (PTIN) on it. Although the tax return preparer always signs the return, the taxpayer is ultimately responsible for the accuracy of every item reported on the return. Anyone paid to prepare tax returns for others should have a thorough understanding of tax matters and is required to have a PTIN. Paid preparers are also sometimes issued an Electronic Filing Identification Number (EFIN), particularly when a preparer will be electronically filing tax returns with the IRS.

### Refundable and Nonrefundable Credits

8.     A refundable credit provides a refund when the credit is more than the tax owed, even if the person is not required to file a tax return. A nonrefundable credit reduces the overall tax owed, but the taxpayer cannot obtain a refund from it.

### Claiming Credits on Income Tax Returns

9.     Form 1040, U.S. Individual Income Tax Return (Form 1040), is the standard Internal Revenue Service (IRS) form that individual taxpayers use to file their annual income tax returns. The form contains sections that require taxpayers to disclose their taxable income for the year to determine whether additional taxes are owed or whether the filer will receive a tax refund. Taxpayers must include personal information on Form 1040, such as their name, address, social security number, and the number of dependents. A taxpayer also needs to report wages, salary, taxable interest, capital gains, pensions, Social Security benefits, and

3

other types of income. Taxpayers may need to file supplemental tax forms with their Form 1040 depending on their situation.

10.   Taxpayers can file their federal income tax return by mailing it to the IRS or submitting it electronically.

   a) To send the federal income tax return by mail, the taxpayer needs to use the appropriate address for the IRS, which depends on where the taxpayer lives and whether or not the taxpayer is enclosing a check or money order.

   b) Electronic filing (e-file) is the automated electronic filing system created by the IRS.  Generally, to electronically file tax returns with the IRS, a return preparer must complete an application process to become an authorized electronic filer of federal income tax returns, unless the preparer is using tax software such as TurboTax.  The requesting party must complete and submit a Form 8633, Application to Participate in the IRS e-file Program.  Once the application is approved, the requestor becomes an Electronic Return Originator (ERO) and is assigned an Electronic Filing Identification Number (EFIN), which the IRS uses to identify and monitor the ERO's activity.

11.   Schedule C, Profit or Loss from Business (Sole Proprietorship) is an IRS form that is completed to report income or losses from a business one operates or in a profession practiced as a sole proprietor. An activity qualifies as a business if it is:

   a)   The primary purpose for engaging in the activity is for income or profit and,

   b)   The activity is conducted with regularity and continuity.

12.   Form 8863, Education Credits (American Opportunity and Lifetime Learning Credits) is an IRS tax form that is used to claim education credits which are based on adjusted

qualified education expenses paid to eligible post-secondary educational institutions. There are two education credits, the American Opportunity Tax Credit and the Lifetime Learning Credit. The Form 8863 is an example of a supplemental tax form that some individuals might be required to submit with their Form 1040.

13.     The American Opportunity Tax Credit, hereinafter "AOTC", was introduced as part of the American Recovery and Reinvestment Act of 2009 that was signed into law in February 2009. The AOTC is a credit to claim qualified education expenses paid for an eligible student for the first four years of higher education. The maximum annual credit for each eligible student is $2,500.00. If the credit brings the amount of taxes owed to zero, up to 40 percent of the remaining amounts of the credit (up to a limit of $1,000.00) may be refunded. This is an example of a refundable credit described above. The amount of the credit is 100 percent of the first $2,000.00 of qualified educational expenses paid for each student, and 25 percent of the next $2,000.00 of qualified education expenses paid for each student.

14.     To be eligible for the AOTC a student must be pursuing a degree or other recognized education credential, be enrolled at least half time for at least one academic period[1] beginning in the tax year, not have finished the first four years of higher education at the beginning of the tax year, not have claimed the AOTC or the former Hope credit for more than four tax years, not have a felony drug conviction at the end of the tax year, and have received a Form 1098-T, Tuition Statement.

15.     In 1997, Congress enacted the Lifetime Learning Credit (LLC) as part of the Taxpayer Relief Act of 1997. LLC was one of five new education tax benefits introduced in

---

[1] Academic Period can be semesters, trimesters, quarters, or any other period of study such as a summer school session. The schools determine the academic periods.

5

1997. LLC lets parents and students lower their tax liability by up to $2,000 to help offset higher education expenses. The LLC is not refundable, which means it can be used to pay the taxes owed, but there is no refund for any of the credit.

16.    To be eligible for the LLC, a student must be: enrolled at an educational institution considered eligible by the Internal Revenue Service, taking higher education courses towards a degree or a recognized educational credential that provides or improves job skills, and enrolled at a qualifying institution for at least one academic period that began within the tax year for which they are claiming the credit.

**Background on the Unemployment Insurance Program**

17.    In 1935, the Federal Social Security Act established a dual program of federal and state unemployment insurance (UI) benefits administered through United States Department of Labor and each U.S. State's State Workforce Agency.  Each state administers its own UI program, within the guidelines set forth by federal and state law.  During periods of high unemployment, the federal government has also funded or augmented state UI benefits, including benefits pursuant to the Coronavirus Aid, Relief, and Economic Security Act (hereinafter "CARES") during the COVID pandemic.

**<u>FACTS SUPPORTING PROBABLE CAUSE TO SEARCH</u>**

18.    The Internal Revenue Service Criminal Investigation hereinafter "IRS-CI" has been conducting an ongoing investigation into ANDRE MAKABU's personal tax returns and his preparation and filing of tax returns, on behalf of others, in which false education credits are claimed. The investigation has revealed that there is probable cause to believe MAKABU has prepared and filed false returns for other individuals for tax years 2018 to 2023, detailed below. The investigation has also revealed that there is probable cause to believe MAKABU

has filed false personal returns for tax years 2018 to 2023 in an attempt to conceal and not report a significant amount of income for these years, as detailed below.

19.    According to Peoria County Property Tax records, MAKABU has owned a residence at 4408 West Bridalwood Drive, Peoria, IL 61615 from November 12, 2015, to the present day. Additionally, internal IRS records show that MAKABU was sent a 2023 Form 1098, received in 2024, by Wells Fargo Bank, detailing mortgage interest paid for the property located at the Subject Premises.

20.    T-Mobile Corporation provided records responding to a grand jury subpoena. The records provided indicated MAKABU has two cellular devices registered in the name of ANDMAK SERVICES. The mobile plan that ANDMAK SERIVCES uses is listed as a Business Unlimited Select Plan, and has two devices associated with the plan, a device with a phone number of (217) 819-2077 and a device with phone number of (217) 841-9261. This Business Unlimited Select Plan has a billing address of the Subject Premises. ANDMAK SERVICES activated this account around December 2014. On the bottom of each tax return that MAKABU completes, in the paid preparer section, MAKABU uses the phone number ending in 2077 as the phone number of his business, ANDMAK SERVICES (See picture below).

Exhibit 1.

**Snapshot of a Paid Preparer Section of a Form 1040**

| Paid Preparer Use Only | Preparer's name Andre Makabu | Preparer's signature | Date 02-03-2024 | PTIN | Check if: ☑ Self-employed |
|---|---|---|---|---|---|
| | Firm's name    Andmak Services | | | | Phone no. (217) 819-2077 |

Further, MAKABU advertises on public websites as a paid tax preparer under the name ANDMAK SERVICES and uses the number ending in 2077 as the business phone number.

Based on this information, it is believed that MAKABU uses these phone numbers to conduct business, as they are paid for in the name of his business, ANDMAK SERVICES, and the billings are sent to his residence.

## PREPARATION OF FALSE RETURNS OF OTHER INDIVIDUALS

21.    ANDMAK SERVICES is a tax preparation business, owned by MAKABU. MAKABU claims business income and expenses for ANDMAK SERVICES every year on his personal Form 1040 that is submitted to the IRS. Internal IRS records show that MAKABU has prepared approximately 835 tax returns for clients between the tax years 2018 and 2023. MAKABU prepared clients' returns using various tax software. MAKABU completed the tax returns, electronically signed every return using his name, his business name, his PTIN, and phone number. MAKABU was paid a fee for providing those services. MAKABU's fee generally was separated from the refund and paid out of the refund. This information is based on bank records, statements made to your affiant by other law enforcement officials, statements made by an informant to other law enforcement officials, and other third-party records received in response to subpoenaes issued to Comcast Corporation, Green Dot Corporation, and Civista Bank. Green Dot Corporation records show that significant amount of MAKABU's clients obtained their refund through Green Dot Corporation and Civista Bank accounts. Some of MAKABU's clients paid MAKABU a fee out of pocket, instead of using Green Dot. Approximately 86 percent of individuals for whom Makabu prepared tax returns received their refund from either Green Dot Corporation (formerly known as Santa Barbara Tax Products Group), Civista Bank, or MetaBank, now known as Pathward. Pathward is a financial institution offering similar services offered by Green Dot and Civista Bank. These financial institutions offer tax refund anticipation loans and/or direct deposit of the tax refunds

to a debit card they issue without the need for the individual client to own an active bank account with their respective financial institution.

22.    Tax returns prepared by MAKABU and sent to the IRS show the following Internet Protocol Addresses (IP Address) confirmed to be associated with Comcast Corporation as the Internet Service Provider (ISP). Tax returns sent electronically to the IRS generally include information such as time, date, and the source from which they are sent, such as the IP Address, ISP, and the owner of those IP Addresses. The following IP Addresses were associated with tax returns filed by MAKABU.

    a)    98.214.133.152

    b)    67.186.73.76

23.    Comcast Corporation records show that these two IP Addresses are being used at the Subject's Premises.

24.    Comcast Corporation records confirm MAKABU conducts business out of his residence, the IP history of MAKABU's residence, matches the IP addresses captured on his clients' electronically filed tax returns.

25.    A Google search for public websites revealed that MAKABU also advertises as a tax preparer out of Peoria, Illinois the Subject Premises[2]. Below are screen shots of websites found using a Google search that show MAKABU's advertisements:

---

[2] MAKABU is registered with the Internal Revenue Service as a paid preparer. However, MAKABU has not updated ANDMAK's address with the IRS from an old address of 4227 North Knoll Ridge Road, Apartment A3 Peoria, Illinois 61614.

Exhibit 2

**Screengrab of Taxrpo Website**



Exhibit 3

## Screengrab of PTINdirectory Website



Andre Makabu - Peoria IL Tax Preparer



Exhibit 4

**Screengrab of TaxBuzz Website**



26.    Per IRS records, MAKABU operates his tax preparation business beyond "tax season", which typically runs from late January to approximately April 15 every year. MAKABU has filed returns as late as November on behalf of individuals, during the years of investigation. MAKABU's PTIN is active.

27.    From tax years 2018 to 2022, MAKABU filed approximately 200 tax returns containing either the AOTC, the LLC, or both credits. Three schools were identified, Illinois Central College (ICC), Kirkwood Community College (Kirkwood), and Parkland College (Parkland) as being used by MAKABU to claim these credits on many of his clients' tax returns.

12

28.    A list of names was created by your affiant, using the IRS database of tax returns, showing 104 individual's tax returns prepared by MAKABU from tax years 2018 to 2022, that attended ICC, Kirkwood, and Parkland, and claimed the AOTC between tax years 2018 and 2022. The list of names were generally the name of the taxpayer filing the tax returns that MAKABU prepared, however, on some tax returns, the student listed was a dependent. Each school was requested to confirm enrollment status of their respective list of students via grand jury subpoena. A total of 55 percent of the students' names sent to ICC, Kirkwood, and Parkland, that claimed the AOTC, did not qualify for the AOTC. The names that did not qualify for the AOTC, were either not students at all or were enrolled less than half time, which is required by the law. The remaining 45 percent of names were identified as students at ICC, Kirkwood, and Parkland.

29.    Below is a table that illustrates MAKABU's conduct and shows the relationship of tax returns prepared by MAKABU from tax years 2018 to 2022, claiming the AOTC, and how many of those tax returns, do not qualify for the AOTC but still claimed the AOTC.

Exhibit 5

**Table of Tax Returns Containing AOTC that are not Eligible.**

| 2018-2022 | | | |
|---|---|---|---|
| Educational Institution | Total Returns Claiming AOTC | Returns Not Eligible | Percentage of Fraudulent Claims |
| Illinois Central College | 18 | 7 | 39% |
| Kirkwood Community College | 25 | 16 | 64% |
| Parkland College | 61 | 34 | 56% |
| | | | |
| Total | 104 | 57 | 55% |

30.    MAKABU continued this conduct during tax year 2023. MAKABU prepared 134 individual tax returns for tax year 2023, filing an additional 26 individual tax returns claiming the AOTC. Out of those 26 tax returns, 12 of those returns make claims that the educational institution attended by a student is either ICC, Kirkwood, or Parkland. Like previous years,

13

MAKABU used ANDMAK SERVICES' EIN, and MAKABU signed each tax return in the paid preparer section of the returns with his PTIN.

31.    In addition to those tax returns identified containing false education credits, MAKABU has also filed other returns containing other fraudulent characteristics in every tax year from 2018 to 2023. For example, MAKABU has filed returns with Forms Schedule C that contain gross receipts of approximately $600.00 and expenses of over $25,000.00. Based on my training and experience, this method results in a large business loss, that is used to offset and lower taxable income, resulting in less tax owed. This is a widely known method used to defraud the IRS.

32.    Below there are two tables displayed. The top table is Paid Preparer Return Statistics from tax years 2018 to 2022, showing the average rate of refund for preparers both in the State of Illinois, and across the United States. The second table shows similar preparer statistics for MAKABU. In every year, MAKABU has a significantly higher refund rate at or near 100 percent. MAKABU'S refund rate for his clients is on average 31.17 percent higher than the State or National average.

Exhibit 6

**Top: Paid Preparer Return Statistics from tax years 2018 to 2022**

**Bottom: Average Rate of Refund for Preparers**

| Region | | 2018 Count | 2018 Percentage | 2019 Count | 2019 Percentage | 2020 Count | 2020 Percentage | 2021 Count | 2021 Percentage | 2022 Count | 2022 Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| State of Illinois | 1 - Refund Return | 2,427,158 | 70.8% | 2,144,247 | 72.9% | 2,531,710 | 73.0% | 2,319,192 | 67.7% | 2,046,846 | 67.3% |
| State of Illinois | 2 - BalDue Return | 764,937 | 22.3% | 632,918 | 21.5% | 704,003 | 20.3% | 896,709 | 26.2% | 811,198 | 26.7% |
| State of Illinois | 3 - NoRefund/NoBalDue | 235,590 | 6.9% | 165,405 | 5.6% | 234,722 | 6.8% | 211,375 | 6.2% | 182,997 | 6.0% |
| | | | | | | | | | | | |
| All Returns | 1 - Refund Return | 57,096,840 | 68.4% | 50,276,721 | 71.2% | 61,254,302 | 70.4% | 56,698,162 | 65.8% | 48,338,666 | 65.8% |
| All Returns | 2 - BalDue Return | 20,140,864 | 24.1% | 16,197,567 | 22.9% | 19,517,798 | 22.4% | 23,760,371 | 27.6% | 20,521,984 | 28.0% |
| All Returns | 3 - NoRefund/NoBalDue | 6,194,935 | 7.4% | 4,179,037 | 5.9% | 6,209,319 | 7.1% | 5,748,424 | 6.7% | 4,559,216 | 6.2% |

| | | 2018 Count | 2018 Percentage | 2019 Count | 2019 Percentage | 2020 Count | 2020 Percentage | 2021 Count | 2021 Percentage | 2022 Count | 2022 Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Returns Prepared by MAKABU | 1 - Refund Return | 142 | 100.0% | 137 | 100.0% | 147 | 99.3% | 127 | 99.2% | 102 | 100.0% |
| Returns Prepared by MAKABU | 2 - BalDue Return | 0 | 0.0% | 0 | 0.0% | 1 | 0.7% | 1 | 0.8% | 0 | 0.0% |
| Returns Prepared by MAKABU | 3 - NoRefund/NoBalDue | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| | | | | | | | | | | | |
| Total Returns Prepared | | 142 | | 137 | | 148 | | 128 | | 102 | |

## FILING OF A FALSE RETURN

33.    ANDMAK SERVICES prepared Forms 1040 for MAKABU and MAKABU's wife, Esther Munongo[3], since tax year 2018. MAKABU prepared his and his wife's returns using his assigned PTIN and completed the "Paid Preparer Use Only" section on the tax returns, listing ANDMAK SERVICES' EIN.  Despite being married and living in the same household, MAKABU used the head of household filing status for both his and Esther Munongo's 2018 through 2023 Forms 1040. Two married individuals living in the same household cannot both file head of household.

---

[3] Based on interviews of Congolese immigrants, Esther Munongo was identified as MAKABU's wife.

34.   MAKABU signed his Forms 1040 with MAKABU's digital signature under penalties of perjury.

35.   From 2018 to 2023, MAKABU's reported total income on his Forms 1040 of $18,356.00, $17,519.00, $22,899.00, $26,672.00, $18,325.00, and $19,835.00, respectively. These amounts include the reported net income totals on MAKABU's Schedule C of his Form 1040 from ANDMAK SERVICES.   MAKABU claimed dependents and received Earned Income Credits, Child Tax Credits, and/or Additional Child Tax Credits, which greatly reduced his tax liability and made MAKABU eligible for inflated refunds.   Although MAKABU may be entitled to take Child Tax Credits for his dependents, excluding income from the tax return inflated the amount of child tax credit MAKABU was able to take. Additionally, MAKABU would likely not have qualified for a majority of the credits due to income limitations if he had reported all of the gross income, he received from whatever source derived. Below is a table that shows the difference of what MAKABU reported as income each year, to gross receipts from whatever source derived found within the evidence to date that went unreported. It is clear from the information received to date that MAKABU would not have qualified to receive a substantial amount of the Earned Income Tax Credit, Child Tax Credit, and/or Additional Child Tax Credits due to the income limitations if he had reported all his income on his respective tax returns each year.

Exhibit 7

**Schedule of Reported Income and Unreported Gross Receipts by Tax Year**

| 2018-2023 | | | |
|---|---|---|---|
| Tax Year | Reported Income | Unreported Gross Receipts | Notes |
| 2018 | $ 18,356.00 | $ - | 1 |
| 2019 | $ 17,519.00 | $ - | 1 |
| 2020 | $ 22,899.00 | $ 158,909.00 | |
| 2021 | $ 26,672.00 | $ 146,233.00 | |
| 2022 | $ 18,325.00 | $ 207,696.00 | |
| 2023 | $ 19,835.00 | $ 67,710.00 | 2 |
| | | | |
| Note 1: Financial Institutions did not provide monthly statements for these years. | | | |
| Note 2: Only one financial institution provided monthly statements for this year. | | | |

36.    Citizens Equity First Credit Union (CEFCU) provided bank statements for 2020 to 2023 and IH Mississippi Valley Credit Union (IHMVCU) provided bank statements for 2020 to 2022. CEFCU provided bank statements for Account Number 01-09036329, and IHMVCU provided bank statements for Account Number 70236084. Both accounts showed a significant amount of cash deposits. The table below shows the amounts of cash deposits and other income items.[4] The table only includes two accounts that reflect significant cash deposits, but it is believed there are more accounts that MAKABU uses, based on transfers in and out of the accounts, to other financial institution accounts.  Based on an analysis of MAKABU's IHMVCU and CEFCU accounts done by your affiant, MAKABU's IHMVCU and CEFCU accounts show transactions to and from other financial institutions such as Bank of America, Discover Corporation, Well Fargo Bank, and PNC Bank. As of this affidavit, we have issued subpoenas for these financial institutions, but we are still waiting for information.

---

[4] Other income items that were counted were deposits into both accounts that were not cash but would still be considered income. Examples of these items include digital transfers from other named individuals, CashApp transfers from other individuals, payroll deposits in the name of other individuals, and IRS payments in the name of other individuals.

Exhibit 8

**Schedule of Cash Deposits made by MAKABU**

| Financial Institution | Account Number | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|
| Cash Deposits By Year | | | | | |
| Citizens Equity First Credit Union (CEFCU) | 01 09036329 | $ 122,479.00 | $ 82,654.00 | $ 117,030.00 | $ - |
| IH Mississippi Valley Credit Union | 70236084 | $ 36,430.00 | $ 63,579.00 | $ 90,666.00 | $ 67,710.00 |
| | | | | | |
| Totals | | $ 158,909.00 | $ 146,233.00 | $ 207,696.00 | $ 67,710.00 |

37.    Green Dot Corporation provided records related to MAKABU's tax preparation business which included tax preparation fees that MAKABU charged clients. Green Dot provided an excel spreadsheet that shows refund amounts that individuals received and shows the amounts of preparer fees that MAKABU was paid. MAKABU used Green Dot Corporation, in partnership with Civista Bank, to separate preparer fees from individuals' refunds in lieu of the taxpayer paying tax preparation fees out of pocket. Analysis of the records provided by Green Dot to MAKABU's Forms 1040, reveal that MAKABU is generally reporting all his business income from tax preparation that was reported to Green Dot. Based on analysis of Green Dot records, it is believed that MAKABU is not reporting income from out-of-pocket fees paid at the time of filing, as MAKABU is not reporting income other than that income from ANDMAK SERVICES which is only paid preparation fees separated by Green Dot.

38.    According to IRS records, on MAKABU's 2023 Form 1040, MAKABU included three Forms Schedule C. One of the Schedule C has zero gross receipts, indicating that this business made no money. However, MAKABU claimed that this business had business expenses of $24,795.00. This gave MAKABU a business loss of $24,795.00 that he used to lower other income. MAKABU claims that this business is named Spark, which is a delivery business, and is located at 1267 Anderson Street Tallahassee, Florida 32303. We confirmed that this address does not exist based on a drive by of the area by law enforcement, county

18

records that have no information for that address, and we further confirmed this address does not exist with the Tallahassee Florida Police Department. As mentioned above, this scheme is widely used to defraud the IRS.

## IMMIGRATION RELATED FACTS

39.   According to federal law enforcement officials from Homeland Security Investigations (HSI), MAKABU has been associated with approximately 24,056 United States citizenship visa applications on behalf of other individuals, who he has assisted in bringing into the United States from the Democratic Republic of Congo since 2006. These citizenship visa applications were filed by MAKABU using his email address ANDREMAKABU@Hotmail.com. MAKABU has entered into agreements with these Congolese individuals requiring payment for immigration assistance.

40.   Peoria County, Illinois court records show that MAKABU, d/b/a ANDMAK SERVICES has engaged in four civil litigation proceedings against individuals for breach of contracts in order to enforce the debt obligations of those contracts. In each of the complaints, MAKABU alleged that Congolese immigrants owed MAKABU debts for MAKABU's efforts "to cover the costs of immigration and travel to the United States for work-related purposes." Pursuant to the contract, these individuals were required to pay MAKABU with their weekly paycheck until the debt was paid off.

41.   As previously indicated, ANDMAK SERVICES is the business name that MAKABU uses for his tax preparation business. Based on MAKABU's actions of filing these four civil lawsuits, a reasonable inference could be made that MAKABU uses ANDMAK SERVICES for tax preparation as well as immigration services but according to MAKABU's tax returns, MAKABU does not report income from providing immigration services.

42.   On or around October 2022, an informant (Informant 1)[5] came forward to law enforcement, reporting that MAKABU entered into a written contract with Informant 1 to assist with immigration proceedings and paperwork. This written contract was on MAKABU's letterhead showing ANDMAK COMPANY. Informant 1 provided law enforcement a picture of the contract entered into with MAKABU, seen below.

Exhibit 9

**ANDMAK COMPANY Immigration Contract**



---

[5] Informant 1 is a Citizen of the Congo, obtained U.S. Lawful Permanent Resident status through the Diversity Visa (DV) program, and has no known criminal history. Law enforcement made no promises regarding prosecution or benefits to Informant 1, nor did law enforcement pay Informant 1 for the information.

43.    This contract stipulated that Informant 1 would pay MAKABU $17,000.00 upon entering the United States, and included a penalty clause for an additional $25,000.00 if Informant 1 did not pay. Informant 1 stated that MAKABU assisted Informant 1 with gaining employment and Informant 1 would remit 50 percent of their salary to MAKABU until full payment of the $17,000.000 was made. This payment made to MAKABU is believed to be for assistance provided to Informant 1 for the completion and filing of imigration forms. This payment made to MAKABU was not reported by MAKABU as income in 2022 or 2023. Informant 1 also told law enforcement that at the time of interview, MAKABU had taken and kept Informant 1's green card until Informant 1 paid the debt to MAKABU in its entirety. Informant 1 worked for approximately a year and eventually paid their $17,000.00 debt to MAKABU. When MAKABU still refused to return Informant 1's Green Card, Informant 1 told MAKABU that they would be going to the authorities, and MAKABU agreed to return Informant 1's Green Card.  At some point during Informant 1's interactions with MAKABU, MAKABU told Informant 1 that he (MAKABU) did tax preparation and that MAKABU would file Informant 1's taxes. MAKABU told Informant 1 that half of Informant 1's refund would be kept by MAKABU.  In 2022, MAKABU's only source of income was from ANDMAK SERVICES for fees charged for preparing tax returns. It is believed that the tax refunds MAKABU received in other people's names were not reported and are likely a source of the unreported gross receipts.

44.    Informant 1 identified at least six other individuals that may have entered into agreements similar to Informant 1's agreement with MAKABU. A review of law enforcement databases, as well as consular, immigration, and benefits databases of the U.S. Department of State (DOS), DHS, and DOL indicate that all six individuals named by Informant 1 are of

Congolese dscent, and immigrated to the U.S. through the Diversity Visa process. One of those DV recipients, J.M., referenced by Informant 1, the address of record on the DV application listed a destination address of 4408 Bridalwood Drive, Peoria, Il. Subsequent to DV recipient J.M.'s entry into the U.S., the Bridalwood address was used as the mailing address for J.M.'s green card.. As to DV recipient G.M., referenced by Informant 1, the address listed on G.M.'s DV paperwork was in Galesburg, IL. However, supporting documents provided to DOS were translated and notarized by MAKABU of ANDMAK COMPANY. G.M. listed the Bridalwood address as his address of record when petitioning for foreign relatives entering the United States. DV recipient P.M., also referenced by Informant 1, listed MAKABU as the U.S. contact in the DV paperwork, provided an address of record as the Bridalwood address, and provided MAKABU's phone number, ending in -2077 as a U.S.-based telephone number.

45. Your affiant has been advised by a Special Agent with Homeland Security Investigations (HSI) that she knows from training, experience, and consultation with immigration and consular officials, that listing an email on visa or immigration benefits applications generally result in regular contact from U.S. Government agencies such as the Departments of State or Homeland Security. These communications generally provide ongoing updates, appointment information, requests for additional evidence, and approval/denial notices.

46. In response to the Grand Jury Subpoena, CEFCU also provided a Santa Barbara Tax Products Group (SBTPG) deposit receipt that shows a direct deposit on March 29, 2022, for $7,536.05, deposited into MAKABU's CEFCU account, in the name of Eunice Monita (Monita). Monita is a separate and unrelated individual from Informant 1. IRS records show

that MAKABU has filed tax returns for Monita for tax years 2019 to 2023. This direct deposit made in March 2022 would have been for taxes filed for Monita for the tax year 2021. According to IRS records, for the 2021 tax year, Monita received a refund of $7,681.00, and Green Dot records showed MAKABU charged Monita a fee of $100.00. However, when comparing IRS records to Green Dot records, MAKABU completed Monita's tax return for tax year 2021, kept Monita's entire refund, and did not claim the $7,526.05 on his (MAKABU's) 2022 Form 1040 as business income. The difference between the amount Monita received according to Green Dot, and what MAKABU deposited into his account, is approximately $145.00. The $45.00 is the amount charged by Green Dot as a fee for their services provided and MAKABU reported the $100.00 fee as income on his Form 1040 in 2022.

47.    According to federal law enforcement officers from the Department of Labor, Office of Inspector General (DOL-OIG), MAKABU is associated with the filing of state unemployment claims, in the names of other Congolese individuals, citing an address for these individuals as the Subject Premises.

48.    Your affiant learned that, during the COVID pandemic, the DOL-OIG collected unemployment data from various states to perform investigations. DOL-OIG provided your affiant the following information, that according to State of Illinois records:

    a) In or around April 2020, MAKABU appears to have filed for Illinois unemployment benefits, listing the Subject premises, phone number ending in -2077 and Email Account ANDREMAKABU@HOTMAIL.COM. The last known employer listed on MAKABU's unemployment claim was ANDMAK SERVICES. This unemployment filing was done in MAKABU's

name, and the unemployment benefit payments were direct deposited into MAKABU's account. MAKABU also filed an unemployment claim for his wife Esther Munongo. Both MAKABU and Esther Munongo reported their unemployment income for 2020 and 2021 according to their personal tax returns for those two years.

b) Between May 2020 and May 2021, MAKABU is believed to have filed 10 other Illinois unemployment claims, in the names of other individuals, listing an address of record as the Subject Premises. Nine individuals' unemployment claims listed the last known employer, as the same employer that Informant 1 told law enforcement MAKABU had placed Informant 1 at for work, Smithfield Foods. One individuals' claim shows a former employer of "daycare". All ten individuals whose unemployment claims that listed the Subject Premises, appear to be of Congolese descent and immigrated to the U.S.

c) These other individuals' unemployment claims were filed requesting payment via debit card. These debit cards are sent to the address, associated with the filing of the claim, where the owner of that address has access to the debit card and the pin number. Funds can be removed from the debit card using an ATM (Automatic Teller Machine). A reasonable inference can be made that these unemployment insurance benefits are income to MAKABU, and is a source for the large amounts of cash deposits MAKABU has deposited into his accounts. In total, these 12 unemployment claims total approximately $356,384.00 in unemployment insurance benefits believed to be paid out to

24

MAKABU. Below is a summary of the unemployment claims that used the Subjects Premises as residence of record.

Exhibit 10

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Summary of Unemployment Claims Made Using Bridalwood Address** | | | | | | | | | | |
| FirstName | LastName | BNFT_AMT | Email | CLMNT_BANK_RT | BankAccount | CLM_TIMESTAMP | Address | City | MailingState | ZipCode | EmployerName |
| LILIANE | KAPESA | $24,609 | LILIANEKAPESA1@GMAIL.COM | 125200947 | 734245393020887 | 1/29/2021 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEATS CO |
| MUFUNDU | NKAKA | $19,610 | MUFUNDUNKAKA10@GMAIL.COM | 271183701 | 1371719000 | 6/13/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | DAYCARE |
| ANGEL | MBUYI | $21,526 | CO2ISANGEL436@GMAIL.COM | 044115809 | 1286304645 | 12/8/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEATS CO |
| ANDRE | MAKABU | $24,136 | ANDREMAKABU@HOTMAIL.COM | 071921891 | 4609438094 | 4/29/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | ANDMAK SERVICES |
| ESTHER | MUNONGO | $40,540 | ANDREMAKABU@GMAIL.COM | 271183662 | 70146244 | 5/7/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | GENERATIONS AT PEORI |
| MIRIAM | LONA | $47,960 | ANDREMAKABU@HOTMAIL.COM | 125200947 | 734245391534993 | 5/8/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEA |
| FALONNE | NYUNGA | $4,384 | FALONNENYUNGA10@GMAIL.COM | 125200947 | 734245393614676 | 5/24/2021 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD |
| CHRISTIAN | IBA | $34,628 | CHRISTIANIBA10@GMAIL.COM | 125200947 | 734245392842565 | 12/24/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEATS CO |
| HENOCK | MABANGA | $28,597 | HENOCKMABANGA10@GMAIL.COM | 125200947 | 734245392806879 | 12/24/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEA |
| OLIVIER | PALANA | $25,912 | OLIVIERPALANA@GMAIL.COM | 125200947 | 734245391599166 | 5/20/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEA |
| KETHIA | KALUBI | $20,921 | KALUBIKETHIA@GMAIL.COM | 125200947 | 734245391612206 | 5/20/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEA |
| EMMANUEL | KAMBU | $63,561 | EMMANUELKAMBU@HOTMAIL.COM | 125200947 | 734245391567790 | 5/14/2020 | 4408 W BRIDALWOOD DR | PEORIA | IL | 61615 | SMITHFIELD FRESH MEA |
| | | | | | | | | | | |
| Total Benefits Paid | | $356,384 | | | | | | | | |

d) As Informant 1 explained to law enforcement, MAKABU would confiscate immigrants' visas or green cards, until their debt has been paid to MAKABU. That is likely the reason why none of these nine individuals came forward and reported MAKABU for keeping their unemployment insurance benefits payments. Further, it is reasonable to infer that based on a witness coming forward to law enforcement claiming that MAKABU kept his tax refund as part of Informant 1's debt repayment, that MAKABU kept these unemployment insurance payments as debt repayment and should be attributed as unreported gross receipts to MAKABU.

49.    Based on my training and experience, the $17,000.00 that MAKABU received from Informant 1, the 50 percent of Informant 1's salary payments, the tax refunds received in other individuals' names, and the $356,384.00 in unemployment payments in the names of other individuals, is considered unreported gross receipts for business services rendered. These amounts should be claimed on MAKABU's Form 1040. MAKABU did not claim any of those items on his 2020, 2021, 2022 Forms 1040. The sources of the unreported gross receipts into MAKABU's bank accounts cited above are believed to be from these payments at least

25

in part. Based on the above, and the contract provided by Informant 1, AMDMAK COMPANY/ANDMAK SERVICES appears to be receiving gross receipts that are not being reported by MAKABU for immigration services, while MAKABU is operating his tax preparation business using the name ANDMAK SERVICES where he reports the fees he receives for tax preparation services.

50.   According to the Illinois Secretary of State website, MAKABU has ownership of a non-profit corporation called ANDMAK FOUNDATION. This entity was created in September 2012. According to the Articles of Incorporation filed with the State of Illinois, the purpose of this organization is to conduct "Religious, Athletic, Social Research." To date there is no known business activity with regard to ANDMAK FOUNDATION. It does not appear that ANDMAK FOUNDATION is operational, receiving gross receipts, or providing services, at least not during the years of investigation. Further, your affiant recently received information showing that MAKABU's 501c3 (Non-Profit) status for ANDMAK FOUNDATION was revoked by the IRS in 2015, for not filing required annual forms. ANDMAK FOUNDATION is now considered a C-Corporation by the IRS.

## RECORDKEEPING

51.   According to Title 26, U.S.C. § 6107, any person who is an income tax return preparer with respect to any return or claim for a refund shall, for a period ending three (3) years after the close of the return period:

a) Retain a completed copy of such return or claim, or retain on a list, the name and taxpayer identification number of the taxpayer for whom such return or claim was prepared, and

b) Make such a copy or list available for inspection upon request.

52. Based on my training and work experience, tax return preparers maintain business records such as tax returns, work papers, and reference material on the premises of their businesses and/or residences, if they operate as a home-based business like MAKABU.

    a) The terms records, documents, and materials include all information recorded in any form, including the originals and all non-identical copies thereof, whether different from the original by reason of any notation made on such copies or otherwise, including the following: written or printed matter of any kind, correspondence, memoranda, notes, diaries, statistics, letters, telephone toll records, contracts, reports, checks, statements, receipts, summaries, ledgers, journals, registers, bills, notebooks, files, logs, lists, worksheets, and invoices.

## SEIZURE OF COMPUTERS AND COMPUTER-RELATED EVIDENCE

53. I have consulted other law enforcement officers who have been certified in computer forensics. These examiners specialize in computer forensics, including the identification, search, seizure, examination, and analysis of computer and electronic evidence. Based upon my own knowledge, training, experience, and consultations with these examiners, I know that computer equipment, such as computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in that they: may be instrumentalities, fruits, or evidence of crime, and/or; may have been used to collect and store information about crimes (in the form of electronic data).

54. Based upon my knowledge, training, experience, and the experience of other law enforcement personnel, I know that computer hardware and computer software may be utilized to store records which include, but are not limited to, those relating to business

activities, criminal activities, associate names and addresses, victims' names, addresses, and images, and the identity and location of assets illegally gained through criminal activity, and other information related to the activity, such as locations of further information related to a criminal activity.

55.    Computer hardware may be described as any and all devices capable of collecting, analyzing, creating, displaying, converting, storing, concealing, or transmitting electronic, magnetic, optical, or similar computer impulses. Computer hardware includes, but is not limited to, any data processing devices (such as central processing units, self-contained laptop and notebook computers, hand-held electronic organizers, personal digital assistants (PDAs), and WebTV units), memory typewriters, removable media, internal and external storage devices (magnetic storage devices such as hard disk drives, diskette drives, and tape drives, optical storage devices such as CD-ROM drives, CD-R/CD-RW recorders, and DVD drives/recorders, and other memory storage devices, such as Subscriber Information Module (SIM) cards), flash memory devices, digital cameras, digital media players such as an iPod, cellular telephones or smart phones, printers, scanners, plotters, circuit boards, monitors, television sets, communication devices such as modems, cables, connectors, programmable telephone dialing or signaling devices, and electronic tone-generating devices, and any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys.

56.    Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password or passphrase (string of alphanumeric characters) usually operates as a digital key to "unlock" particular data security

devices. Data security hardware may include encryption devices, chips, cards, and circuit boards. Data security software or digital code may include a programming code that creates "test" keys or "hot" keys, which perform certain preset security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

57.    Based upon my knowledge, training, and experience, and the experience of other law enforcement personnel I've consulted with, I know that records stored on computer hardware and software may be more fully described as information or data stored in the form of electronic, magnetic, or digital coding on computer media or on media capable of being read by a computer or computer-related equipment. This media includes, but is not limited to, fixed hard drives and removable hard drive cartridges, compact discs, DVDs, tapes, floppy diskettes, flash drives, flash memory, SIM cards, and any other media capable of storing electronic, magnetic, or digital coding.

58.    Searching and seizing information from computers often requires examiners to analyze every file on a computer, because every file has the potential to contain evidence. The file name and file type can be easily changed to anything the user wishes it to be. For example, a user may change the name and file type of a photo so that it will appear to be a text file, and vice versa. In many cases, the only way a searcher can determine the true content of a file is to open it and view its contents. In addition, deleted files can remain on a computer's hard drive or other related electronic storage media for an indefinite period of time, allowing forensic analysts the ability to recover some or potentially all of the deleted files.

59.    Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, I know that in order to completely and accurately retrieve data

maintained in computer hardware or on computer software, all computer equipment, should be processed by a qualified computer specialist in a laboratory or other competent setting. This is due to:

a.      **The volume of evidence**: Computer storage devices (like hard disks, removable media, optical media, diskettes, tapes, laser disks, Bernoulli drives) can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names or use encryption software. This may require searching authorities to examine all the stored data to determine which files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on site;

b.      **The technical requirements**: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze a system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to inadvertent or intentional modification or destruction (from external sources or destructive code embedded in the system as a booby trap), a controlled environment is essential to its complete and accurate analysis. Further, when a user deletes a file on a computer, only the pointer (a tool that tells the operating system where the file is located on the media) to the file is deleted. The actual file may remain on the media for

a long period of time, possibly years. Forensics examiners can use software tools that can locate and partially and/or fully recover deleted files;

c.    **The system functionality:** Computer systems are very complicated, and the proper operation of the system may be dependent upon the hardware that is connected to it. For this reason, it is usually necessary to seize all hardware connected to the equipment in order to ensure the proper operation of the system during the analysis process.

<u>**CONCLUSION**</u>

60.    Based upon my training, experience, and information contained in this affidavit, there is probable cause to believe that ANDRE MAKABU, doing business as ANDMAK SERVICES, ANDMAK COMPANY, AND ANDMAK FOUNDATION has committed and is committing violations of Title 26, U.S.C. § 7206(1); 7206(2); and Title 18, U.S.C. § 371, 1546, 1341, and 1343.

61.    Further, I have probable cause to believe that books and records and other items more fully described in Attachment B, pertaining to the mentioned violations are currently maintained on the premises of 4408 West Bridalwood Drive, Peoria, Illinois 61615, a location described in Attachment A.

s/Redacted

___                                              ____

William Doherty
Special Agent
IRS - Criminal Investigation

Sworn and described to me telephonically pursuant to Fed. R. Crim. P. 41(d)(3)
and Rule 4.1 this 14th day of November, 2024.


_____

JONATHAN E. HAWLEY
UNITED STATES MAGISTRATE JUDGE

31

## ATTACHMENT A

## LOCATION TO BE SEARCHED

The two-story, single-family residence with neutral colored siding on the second floor, multi-colored brick on the first floor, with dark colored shutters around the windows, located at 4408 West Bridalwood Drive, Peoria, Illinois 61615, pictured below.



## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

The items to be seized constitute fruits, instrumentalities, and evidence of the violations by Andre Makabu of Title 26 U.S.C. § 7206(1); regarding false statements on a tax return and Title 26 U.S.C. § 7206(2); regarding the preparation of false tax returns from January 1, 2018 through the present, including but not limited to the following:

**Individuals**
Andre Makabu

**Businesses**
AndMak Services
AndMak Company
AndMak Foundation

1.      Any and all records that show ownership, control, affiliation, and operation of the above-listed businesses, or any other companies, entities, investments, or assets associated with the above-listed individuals, including but not limited to, articles of incorporation, corporate resolutions or minutes, other business or corporate records, corporate memoranda, by-laws, shareholder information, service agreements, contracts, partnership agreements, memoranda of understanding, and other documents evincing ownership, control, affiliation, and operation.

2.      Financial statements and reports, ledgers, journals, contracts, agreements, statements, bills, invoices, banking and loan records, financial institution records, customer/client records, correspondence, facsimiles, memorandum, tax-related records or other records utilized in the preparation of tax filings, travel records, and other records related to revenues, expenses, assets, liabilities, financial obligations, capital expenditures, and the receipt, disposition, or expenditure of income, monies, funds, or assets.

3.    Personnel files/employee information for all employees, vendors, and/or independent contractors who performed work for the above listed persons or entities, or any entity for which Andre Makabu is the registered agent, including, but not limited to, payroll records, time sheets and other records of work performed, applications for employment, contracts, correspondence, employment applications, emergency or family contact information, wage or salary information, paystubs or paychecks, labor contracts, employment offers, Social Security forms, memorandums or documents showing disciplinary actions, complaints, termination, promotion or performance documents and reviews, background checks, Forms I-9, Forms 1099, Forms W-2 and Forms W-4.

4.    Client records, related to the above entities, including client lists, correspondence, copies of Federal and State income tax returns, work papers used to prepare tax returns, notes regarding services rendered, receipts for payment of services, invoices, contracts, and any other documents showing a business relationship including pertinent documents and records that would identify foreign nationals in the process of seeking immigration assistance with visa applications.

5.    Receipts, investment records, stock and bond records, mortgages, promissory notes, handwritten notes, calendars, day planners, logs, records related to wire transfers or reflecting financial transactions, and records related to or tending to identify the source, accumulation, disposition, location, or ownership of assets, money, wealth, or property.

6.    Articles of personal property evidencing the identity of the person(s) occupying, possessing, residing in, owning, frequenting, or controlling the premises to be searched or property including, but not limited to keys, rental agreements and records, property rental/acquisition records, utility and telephone bills and receipts, photographs, answering machine tape recordings, telephone beeper or paging devices, storage records, vehicle records, canceled mail envelopes,

34

correspondence and financial documents such as tax returns, bank records, safe deposit box records, cancelled checks, and other records of income and expenditure, credit card and bank records.

7.      Address books, photographs, and other documents or items tending to show the identities of associates, co-conspirators, or business clients, or tending to identify the location or possession of criminally derived property.

8.      Documents or other items related to safety-deposit boxes, storage containers or other places where evidence, fruits or instrumentalities of the above-described crimes may be stored, including any keys, passwords, or combinations necessary to access such places.

9.      Blank, completed, and/or partially completed Federal and state tax forms schedules, instructions, forms, Forms 1099, Forms W-2, and any related information, including drafts and tax preparation or recordkeeping, spreadsheet or database software, notebooks containing financial information, client lists, receipts for payment of tax and consulting fees, notices, letters, notes, envelopes, or other correspondence to or from the Internal Revenue Service, United States Treasury, and/or State Revenue Departments.

10.     Any mail addressed to any individual or business listed above, relating to correspondence with/from financial institutions, the preparation of income tax returns, business consulting, or other business matters.

11.     Records of any fees, payments, or collateral pledged or provided to MAKABU, ANDMAK, or any associated persons or business entities, either in a foreign country or within the United States.

12.     Immigration-related documents, including Forms DS-160 (Online Nonimmigrant Visa Application form for temporary travel to the U.S. and for K (fiancé) visas), Forms DS260

(Online Immigrant Visa Application), Forms I-485 (Application to Register Permanent Residence or Adjust Status), Forms I-130 (Petition for Alien Relative), and Affidavits of Support in relation to immigration proceedings, and any communications related to immigration.

13.    Evidence of who used, owned, or controlled electronic devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chats," instant messaging logs, photographs, and correspondence.

14.    Records, documents and items relating to the preparation, submission, processing or handling of unemployment insurance taxes or of applications for benefits, including but not limited to unemployment insurance applications, debit cards, proceeds and correspondence to and from the Illinois Department of Employment Security, or other state agencies administering unemployment insurance programs.

15.    Records, documents and items relating to the receipt and distribution of proceeds from unemployment insurance applications, including but not limited to any agreements, lists of or ledgers or notebooks reflecting persons receiving or seeking unemployment insurance funds, any communications with such persons.

16.    Records, documents and items relating to identities of individuals and businesses used to submit unemployment insurance applications or to receive unemployment insurance benefits, including U.S. Social Security Cards, state-issued identification cards, employee identification cards, payroll check stubs, tax filings, and any documents pertaining to employment.

17.    Records, documents and items relating to the formation and operation of any businesses, including incorporation, tax, employment, personnel, payroll, corporate minutes,

36

handwritten notes, and other business records tending to establish the control or reveal the nature of business conducted.

18.     Records, documents and data tending to establish the use and control of any computer, internet service account or email account tending to prove the use of any electronic device to contact state unemployment agencies.

19.     Records, documents and data showing contact by telephone with state unemployment agencies.

20.     Records relating to unemployment insurance filings, and associated purported claimants, including but not limited to documents containing personal identifying information, correspondence, notes, ledgers, appointment calendars, address books, and diaries as it relates to unemployment benefits received in nominee names as unreported income on Makabu's tax returns, as cited in Paragraph 45 of the affidavit.

21.     Items in the paragraphs above that are stored in computer media, including media capable of being read by a computer (such as external and internal computer hard drives, memory sticks, and thumb drives).

22.     Items needed to access the information listed above, such as cabinet and desk keys; documents and items regarding the rental or use of a storage unit including contracts, rental agreements, and safe and lock combinations and keys.

23.     Photographic and audio media, such as microfilm, microfiche, prints, slides, negatives, videotapes, audio cassettes, and digital formats, documents, records, or items needed to retrieve the information from the photographic or audio media as it pertains to activities that have generated unreported income by Makabu.

24.     Computers, cell phones, and other computing devices capable of containing evidence as described herein.

25.     Any records, documents, invoices, and materials, in any format or medium, that concern online storage or other remote computer storage, to include but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

26.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.      evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.      evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.      evidence of the lack of such malicious software;

d.      evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.    evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

f.    evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

g.    evidence of the times the COMPUTER was used;

h.    login credentials, to include but not limited to user-name and passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

i.    documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

j.    records of or information about Internet Protocol addresses used by the COMPUTER;

k.    records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

l.    contextual information necessary to understand the evidence described in this attachment;

m.    Electronic devices such as laptops, modems, routers, and network equipment used to connect computers to the Internet, such as jetpacks, thumb drives, external hard drives, cellular telephones, SIM cards, printers, devices used to create false identification documents, and credit/debit card readers;

39

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).